UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

United States of America,

Plaintiff,

vs.                                         REPORT AND RECOMMENDATION

Dean D. Hughson,

Defendant.          Crim. No. 07-51 (DSD/RLE)

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## I.  Introduction

This matter came before the undersigned United States Magistrate Judge pursuant to a general assignment, made in accordance with the provisions of Title 28 U.S.C. §636(b)(1)(B), upon the Motion of the Defendant Dean D. Hughson ("Hughson") to Dismiss the Indictment.

A Hearing on the Motion was conducted on April 12, 2007, at which time, Hughson appeared personally, and by Paul C. Engh, Esq.; and the Government appeared by Robert M. Lewis, Assistant United States Attorney.

For reasons which follow, we recommend that Hughson's Motion be denied.

## II.  Factual Background

Hughson is charged with one Count of Perjury, in violation of Title 18 U.S.C. §1623; and one Count of Obstruction of Justice, in violation of Title 18 U.S.C. §1512(c).  The events which gave rise to the charges are alleged to have occurred on or about March 7, 2005, and all of the events are alleged to have occurred in this State and District.  As pertinent to those charges, and to the Motions now before us, the operative facts may be briefly summarized.[1]

On March 7, 2005, Hughson testified before a United States Grand Jury, which was convened in St. Paul, Minnesota.  [T. 2].  Hughson was informed that the Grand Jury was conducting an investigation of possible violations of Federal criminal laws and, in particular, of bank fraud.  [T. 3].  Prior to his offer of testimony, Hughson was advised of his rights under the Fifth and Sixth Amendments to the United States

---

[1]Rule 12(d), Federal Rules of Criminal Procedure, provides that "[w]hen factual issues are involved in deciding a motion, the court must state its essential findings on the record."  As augmented by our recitation of factual findings in our "Discussion," the essential factual findings, that are required by the Recommendations we make, are contained in this segment of our Opinion.  Of course, these factual findings are preliminary in nature, are confined solely to the Motions before the Court, and are subject to such future modification as the subsequent development of the facts and law may require.  See, United States v. Moore, 936 F.2d 287, 288-89 (6th Cir. 1991); United States v. Prieto-Villa, 910 F.2d 601, 610 (9th Cir. 1990).

Constitution.  Id.  Upon affirming that he understood those rights, Hughson advised

that he had conferred with counsel, but had not retained a lawyer on his  behalf.  Id.

After some preliminary questions, Hughson was asked about his familiarity

with the "egg business."  [T. 4].   He responded that he had been involved in the egg

business since 1978, and testified as to his experiences within the industry.  [T. 4-12].

He was then asked about the creation of T.H. Transportation ("THT"), which is a

business entity that Hughson, and Norm Thompson ("Thompson"), had formed.  [T.

12].   Hughson testified that THT eventually experienced financial difficulties, as a

result of Thompson's inability to "say no" to D.B. Foods ("DBF"), and that THT

couldn't pay its bills because "the accountant couldn't figure out the problem."  [T.

15-17].   Hughson stated that DBF owed THT significant amounts of money, and

detrimentally impacted upon THT's operative cash flow.  [T. 17]. Hughson was then

asked about the amounts of money that DBF owed THT, and he responded as follows:

> You know everything looked really good but it was –  first
> off, they had the books apparently completely messed up,
> you, know, the bookkeeper. [Thompson] is not a
> bookkeeper, you know the bookkeeper is the one doing it.
> And I you know contacted the CPA which is the person that
> did the annual books and asked them.  They looked at it
> only couldn't figure it out.

[T. 18-19].

Then, Hughson was asked whether he had spoken with Thompson concerning the problem with DBF.  [T. 17-20].  He confirmed that he had, which prompted a question as to what Thompson said was "the cause for that whole financial problem."  [T. 20].  In response, Hughson stated: "He didn't know, and I honestly believe that he didn't." Id.  As a follow-up question, Hughson was asked if it was "fair to say that [he did] not know and can't talk about what happened to lead to the financial trouble with [DBF] besides what you've already said, the name changes and changes in ownership with [DBF] and [Thompson's] lack of business ability."  Id.  In response, Hughson testified that it would be "difficult to say [so] beyond a shadow of a doubt."  Id.

Later, Hughson testified that he lacked any direct knowledge of Thompson's business operations after the collapse of THT in the fall of 2001, as he "wasn't involved in his business or with the people he was involved with."  [T. 25].  Further, he stated that he was aware of rumors that Thompson was experiencing trouble paying his bills, and was continuing to work with DBF.  [T. 25-29].   The following exchange followed:

> Q:    Do you have any reason to think that Norm Thompson was going into business with D.B. Foods as an active investor in the company?
>
> A:    To be honest with you if I saw it with my own eyes at this point I'd disbelieve it because -- well first off,

> it later turned out, which I verified for my own self,
> later turned out that the people running D.B. Foods
> didn't own D.B. Foods, and that's why that there
> was an overnight takeover.

[T. 29-30].

Hughson was subsequently asked about THT's corporate structure, and whether he

had received any compensation for any work that he had performed "trying to work

out these deals with D.B. Brown," or "working on the issue between [THT] and

[DBF]." [T. 32-33]. In response, Hughson stated that he had not, and "[t]here was

no money paid to anyone." [T. 33].

Hughson then testified that the accountant, who had examined the finances of

THT, could not find a problem, which would explain why THT was experiencing

financial difficulties, without completely "redoing" the books. [T. 34]. The following

exchange then occurred:

> Q:   Is it possible that the problem that T.H., that drove
> T.H. under was not the debt owed by D.B. Foods but
> something else?

> A:   Well it wasn't just D.B. Foods, but that was
> symptomatic of the problem was that they couldn't
> explain that.   They couldn't explain the billing
> system. You couldn't tell if -- and then when, when
> they, when Norm Thompson was unable to make
> some of the payment, then immediately there were
> other people who quit paying their bills.

> Q:   Can you explain to me more what you mean you couldn't explain the billing system?  How did that create financial difficulties for T.H.?
>
> A:   Well, you couldn't explain -- if you could say well the problem is that your prices, you're 5 percent too cheap on your trucking costs, you know, you're charging 5 percent too little or whatever, well then you can immediately fix it.  You would know that you're too cheap or whatever but you couldn't explain it because they couldn't understand the books.  The books showed the company was doing fine.  There was not money that had been gone, there was no large sums of cash had been taken anywhere, you know, but you couldn't even be sure of any of that because of the way the billing system was set up.

[T. 34-35].

In a two-Count Indictment, the Government contends that several of Hughson's statements, which we have recounted above, satisfy the elements for perjury, and for obstruction of justice.  By this Motion, Hughson seeks a dismissal of the Indictment, premised on the argument that the statements he gave were either literally true, or were ambiguous, and therefore, he contends that the questioning failed to comply with the requirements of <u>Bronston v. United States</u>, 409 U.S. 352, 359 (1973), such that dismissal of his Indictment is mandatory.

### III.  <u>Discussion</u>

A.   <u>Standard of Review</u>.  Rule 12(b), Federal Rules of Criminal Procedure, allows our consideration, at the pretrial stage, of any defense "which is capable of determination without the trial of the general issue."   To withstand a Motion to Dismiss, an Indictment must allege that the defendant performed acts which, if proven, would constitute a violation of the law under which he has been charged.  See, <u>United States v. Polychron</u>, 841 F.2d 833, 834 (8th Cir. 1988).  As a result, if the acts, that are alleged in the Indictment, do not constitute a criminal offense, then the Indictment should be dismissed.  See, e.g., <u>United States v. Coia</u>, 719 F.2d 1120, 1123 (11th Cir. 1983), cert. denied, 466 U.S. 973 (1984).  In reviewing the sufficiency of an Indictment, or of any of its Counts, we are to determine whether the Indictment sufficiently sets forth the elements of the offenses alleged, as to the offenses that are said to have occurred, in order to place the defendant on fair notice of the charges against him, and to enable him to raise an acquittal, or conviction, so as to prevent his double jeopardy for a single offense.  See, <u>Hamling v. United States</u>, 418 U.S. 87, 117 (1974); <u>United States v. Hall</u>, 20 F.3d 1084, 1087 (10th Cir. 1994).

In determining whether an Indictment has sufficiently set forth the elements of the offense charged, the Indictment will generally be deemed sufficient "'unless no reasonable construction can be said to charge the offense.'"  <u>United States v. Morris</u>,

18 F.3d 562, 568 (8th Cir. 1994), quoting United States v. Peterson, 867 F.2d 1110, 1114 (8th Cir. 1989).  In making that assessment, "[a]n indictment should be tested solely on the basis of the allegations made on its face, and such allegations are to be taken as true."  United States v. Hall, supra at 1087, citing United States v. Sampson, 371 U.S. 75, 78-79 (1962); see also, United States v. Barker Steel Co., Inc., 985 F.2d 1123, 1125 (1st Cir. 1993); United States v. Cadillac Overall Supply Co., 568 F.2d 1078, 1082 (5th Cir. 1978).

Ordinarily, the Court's assessment is limited to the "four corners" of the Indictment, and the Court should studiously avoid the consideration of evidence from sources beyond the Indictment.  See, United States v. Hall, supra at 1087.  However, it is permissible, and even desirable in certain circumstances, for the Court to examine the factual predicates of an Indictment, particularly where material facts are undisputed, in order to ascertain whether the elements of the criminal charge can be shown.  Id.; United States v. Brown, 925 F.2d 1301 (10th Cir. 1991).

B.    Legal Analysis.  Hughson contends that his Motion to Dismiss is solely premised upon an ascertainment of whether the Government's questioning of him, during the Grand Jury proceedings, comports with the United States Supreme Court holding in Bronston v. United States, supra, such that we can find the Government's

questioning fundamentally ambiguous, and imprecise, thereby requiring the Indictment to be dismissed prior to Trial.[2]  See, Hughson's Reply Memorandum, Docket No. 22, at p. 1.

In Bronston, the United States Supreme Court addressed the application of the Federal perjury statute, see, Title 18 U.S.C. §1621, to persons who provide answers, under oath, that are literally true, but are unresponsive, and arguably misleading by negative implication.  Id. at 352-53.  There, the perjury charge arose from statements made by the president, and sole owner of a company, during bankruptcy proceedings. After finding that the statements were literally true, but unresponsive, the Supreme Court noted that "[p]recise questioning is imperative as a predicate for the offense of perjury," and that "any special problems arising from the literally true but unresponsive answer are to be remedied through the 'questioner's acuity' and not by

-----

[2]We note that the Indictment charges Hughson with one Count of perjury, as well as one Count of obstruction of justice.  At the Hearing, Hughson argued that a dismissal of the perjury Count necessitates the dismissal of the obstruction of justice Count -- analogizing the relationship between the two Counts as a "house of cards." However, the statutory elements of each Count is different.  Compare, Title 18 U.S.C. §1512(c) (obstruction of justice), with Title 18 U.S.C. §1623 (perjury).   Since Hughson offers no more than a conclusory argument that dismissal of the perjury Count requires a dismissal of the obstruction of justice Count, we recommend that Hughson's Motion to Dismiss the Indictment, as to the obstruction of justice Count, be denied, as legally unsound.

a federal perjury prosecution."  Id. at 602; see also, United States v. Porter, 994 F.2d

470, 474-75 (8th Cir. 1993)(finding the Trial Court "should have granted defendant's

motion for acquittal **made at the close of the government's case**," since there, the

"defendant's testimony is vague, unresponsive or evasive * * * [and] the answers

given are literally true.")[emphasis added], citing Bronston v. United States, supra at

361-62.

Our Court of Appeals has applied Bronston on several occasions.  In United

States v. Williams, 552 F.2d 226 (8th Cir. 1977), a defendant was convicted, **after a**

**Jury Trial**, for making false declarations to a Grand Jury.  There, the defendant

argued that his responses were literally true, and that, pursuant to Bronston, any

difficulties arising from his unresponsive answers, should have been addressed in the

first instance by the questioner, and not made subject to a Federal perjury

investigation.  However, our Court of Appeals distinguished Bronston, by noting that

the truth or falsity of the defendant's responses could "only be ascertained in the

context of the question asked."  Id. at 229, citing United States v. Williams, 536 F.2d

1202, 1205 (7th Cir. 1976), and United States v. Chapin, 515 F.2d 1274, 1280 (D.C.

Cir. 1975), cert. denied, 423 U.S. 1015 (1975).  The Court further clarified that "[t]he

intended meaning of a question and answer are matters for the jury to decide," and found that the evidence was sufficient to support the Jury's Verdict.  Id.

In United States v. Lasater, 535 F.2d 1041 (8th Cir. 1976), abrogation recognized by United States v. Ferro, 252 F.3d 964 (8th Cir. 2001), cert. denied 534 U.S. 1083 (2002), our Court of Appeals affirmed the pretrial dismissal of an Indictment, which asserted four (4) Counts of perjury, against a defendant who had argued that the questions posed by the Government attorneys were immaterial and imprecise, such that the allegedly false statements were not material to the Grand Jury's investigation.  Id. at 1049-50, citing United States v. Bronston, supra at 359. Specifically, the Court found that "the failure of the government prosecutors to find answers to the ultimate questions could not have resulted from the allegedly false statements charged in the indictment," and that "[i]t is apparent that the finding of a lack of materiality was correct."

However, the Supreme Court has subsequently recognized that the materiality of a statement, in the context of a perjury charge, must "be decided by the jury, not the court."  Johnson v. United States, 520 U.S. 461, 465 (1997); see also, United States v. Gaudin,  515 U.S. 506, 523 (1995)("The trial judge's refusal to allow the jury to pass on the 'materiality' of Gaudin's false statements infringed that right); United

- 11 -

States v. Ferro, supra at 968 ("Now, so long as the indictment contains a facially sufficient allegation of materiality, federal criminal procedure does not 'provide for a pre-trial determination of sufficiency of the evidence.'"), quoting United States v. Critzer, 951 F.2d 306, 307-08 (11th Cir. 1992).

In United States v. Robbins, 997 F.2d 390, 395 (8th Cir. 1993), cert. denied, 510 U.S. 948 (1993), our Court of Appeals clarified that, "[a]bsent fundamental ambiguity or impreciseness in the questioning, the meaning and truthfulness of declarant's answer is for the jury." Id., citing United States v. Wolfson, 437 F.2d 862, 878 (2nd Cir. 1970).   In Robbins, a defendant was convicted of making a false oath after a Jury Trial, and appealed his conviction by arguing that the questioner asked an imprecise question.  Id. at 392 and 395.  In finding that the evidence before the Jury sustained the Verdict, the Court recognized that "[t]he literally true answers to the questions that are the basis of the false oath charge must be considered in the context in which they were given," and that the declarant's "answers cannot be considered in isolation."  Id. at 395, citing Bronston v. United States, supra at 355, 356 n. 3.

More recently, in United States v. Hirsch, 360 F.3d 860 (8th Cir. 2004), our Court of Appeals addressed a District Court's denial of a pretrial Motion to Dismiss an Indictment, where the defendant argued that the "allegedly perjurious statements

- 12 -

were 'literally true' or the questions were vague and ambiguous such that he could not

be found to have committed perjury." Id. at 863.  The Court of Appeals found that the

defendant's testimony was not fundamentally vague or ambiguous, and that:

> His motion to dismiss amounted to no more than a request
> for the court to determine his guilt or innocence based on
> factual elements of the offense which were within the
> purview of the jury to decide at trial.  See, United States v.
> Robbins, 997 F.2d 390, 395 (8th Cir.1993)(stating "absent
> fundamental ambiguity or imprecis[ion] in the questioning,
> the meaning and truthfulness of a declarant's answer is for
> the jury").  See also, United States v. Williams, 552 F.2d
> 226, 229 (8th Cir.1977)(stating "[t]he intended meaning of
> a question and answer are matters for the jury to decide").
> We agree with the district court it was for the jury to decide
> whether Hirsch's statements could be shown to be false by
> the evidence indicating how long the Jimmy was on the
> Vorland property and whether it ran.

Id. at 863.

Recently, in the unpublished decision of United States v. Kraft, 2005 WL 578313 (D.

Minn., March 11, 2005), aff'd, 162 Fed.Appx. 664 (8th Cir. 2006), a Court in this

District addressed a pretrial Motion to Dismiss several Counts of making false

statements on a Government form, in which the defendant argued that the terms of the

questions and responses were ambiguous to such an extent that a criminal prosecution

was unsupported.  Id. at *5.  There, the Court concluded that, "[w]hether a [question]

is ambiguous must be ascertained in the context in which the 'questions' and

'answers' were made, 'as well as other extrinsic evidence relevant to [the declarant's]

understanding of the [dialectic]."  Id. at *6, quoting United States v. Culliton, 328

F.3d 1074, 1079 (9th Cir. 2003), cert. denied, 540 U.S. 1111 (2004) and citing United

States v. Williams, supra at 229.  As the Court explained:

> [A] claim that a matter considered in its proper context is "arguably ambiguous" involves an attack on the sufficiency of the evidence. United States v. Farmer, 137 F.3d 1265, 1269 (10th Cir. 1998).  In such a situation, "the meaning and truthfulness of a declarant's answer is for the jury to decide."  United States v. Robbins, 997 F.2d 390, 395 (8th Cir.), cert. denied, 510 U.S. 948 (1993); see also [United States v. ] Manapat, 928 F.2d [1097,] 1099 [(11th Cir. 1991)]("when a question of law is 'arguably ambiguous,' 'the defendant's understanding of the question is a matter for the jury to decide." ')(citations omitted).

Id. at *6.

Here, Hughson invites us, prior to Trial, and therefore, without Trial testimony, to

hypothecate whether the Government's questioning of him, as alleged in the

Indictment, was so ambiguous as to conclude that his prosecution should be precluded

as a matter of law.   Apart from representing that his client was being truthful,

Hughson's counsel has not demonstrated, by undisputed evidence, that a Jury could

not reasonably, and  responsibly, conclude that his responses were untruthful. We do

not suggest that such proof is possible on a pretrial basis, we merely underscore that

- 14 -

Rule 12 mandates that we not usurp the Jury's role in assessing the credibility of witnesses, and the weight to be afforded to their testimony.

As the cited cases make plain, such factual determinations, in the first instance, are solely within the province of the Jury, as a full exploration of the context of the questioning and responses, the state of mind of the declarant, and whether the answers were literally truthful, is inherently a Jury-submissible question of fact.  See, United States v. Hirsch, supra at 863; United States v. Robbins, supra at 395; United States v. Williams, supra at 229; see also, United States v. Kraft, supra at *6; United States v. DeZarn, 157 F.3d 1042 (6th Cir. 1998)(applying Robbins, and noting that, "where it can be shown from the context of the question and the state of the testifier's knowledge at the time that the testifier clearly knew what the question meant, the Government must be permitted to present, and the fact-finder to consider, those contextual facts.").

Hughson urges that a "fundamental ambiguity or impreciseness in the questioning" exists, such that the case should not proceed to Trial.  See, Hughson's Reply Memorandum, at p. 1, citing United States v. Robbins, supra at 395.  However, we find no such "fundamental ambiguity or impreciseness," at least as a matter of law, and we defer to a Jury's proper province on that question.  See, United States v.

Hirsch, supra at 863; United States v. Robbins, supra at 395; United States v. Kraft, supra at *6.  As but one example of the exchange, which the Government alleges as perjurious, Hughson was asked if he "ha[d] any direct knowledge of [Thompson's] business operations after [THT] collapsed in the fall of 2001."  Hughson responded, "I don't," and further, "I wasn't involved in his business or with the people he was involved with."  [T. 25]; Indictment, Docket No.1, at ¶11(f).  The question, however, merely asks Hughson to confirm, or deny, whether he possessed direct knowledge of certain activities.  Hughson responded in such a way as to allow a Jury to find that he understood the question, and even went so far as to provide the rationale for his answer.  Accordingly, we find both the question, and Hughson's response, to be sufficiently clear and precise, as to belie any principled contention that a fundamental level of imprecision or ambiguity existed so as to preclude a meaningful -- and therefore, actionable response -- that properly falls within the Jury's purview.  See, United States v. Robbins, supra at 395; United States v. Williams, at 229.  Therefore, we recommend that Hughson's Motion to Dismiss the Indictment be denied.

The cases cited by Hughson in support of his Motion, addressed the question of vagueness, unresponsiveness, and evasiveness, after a full Trial, and do not suggest that the Trial Court erred on any pretrial basis.  See, United States v. Porter, supra at

475 ("The district court should have granted defendant's motion for acquittal made **at the close of the government's case**")[emphasis added]; United States v. Vesaas, 586 F.2d 101, 104 (8th Cir. 1978)(vacating Judgment and dismissing Indictment, and noting that "[t]he difficulty here, however, is that the indictment is not only self-contradictory, but also sets forth as the alleged false statement the defendant's denial of a legal impossibility"); United States v. Lasater, supra at 1050 (dismissing Indictment after finding, as a matter of law, that the statements were immaterial to Grand Jury investigation).

Plainly, those Courts had the benefit of hindsight, by which to determine the veracity of the statements through a considered weighing of the conflicting evidence in the Record, with the benefit of the factual context of the questions and answers posed and asked, which we are precluded from doing by the absence of a full evidentiary Record.  See, United States v. Ferro, supra at 968 ("[S]o long as the indictment contains a facially sufficient allegation of materiality, federal criminal procedure does not 'provide for a pre-trial determination of sufficiency of the evidence.'"), quoting United States v. Critzer, 951 F.2d 306, 307-08 (11th Cir. 1992); see also, Rule 12(b)(2), Federal Rules of Criminal Procedure ("A party may raise by pretrial motion any defense, objection, or request that the court can determine without

a trial of the general issue.").  Accordingly, we recommend that the Jury be allowed, in the first instance, to weigh the context, veracity, and meaning, of Hughson's testimony, and that his Motion to Dismiss his Indictment be denied as premature.

Hughson further argues that he should have been advised, either prior to, or during the Grand Jury proceeding, that he was either a "target," "subject," or "witness," for purposes of the investigation, pursuant to the United States Attorney's Manual, Section 9-11.151, but we find the argument unavailing.  See, Hughson's Reply Memorandum, at pp. 2-3.  "[T]he prospect of being indicted does not entitle a witness to commit perjury, and witnesses who are not grand jury targets are protected from compulsory self-incrimination to the same extent as those who are," and "all of this is largely irrelevant, since we do not understand what constitutional disadvantage a failure to give potential defendant warnings could possibly inflict on a grand jury witness, whether or not he has received other warnings."  United States v. Washington, 431 U.S. 181, 189 (1977); see, United States v. Hutchings, 751 F.2d 230, 235 (8th Cir. 1984), cert. denied 474 U.S. 829(1985)(finding that a defendant could not "assert that the [Government's] failure to advise him that he was a target of the grand jury investigation abrogated his Fifth Amendment right.").

Since Hughson was advised of his right against self-incrimination at the outset of the Grand Jury proceeding, and without any authority that contravenes the cases we have analyzed, we conclude that some alleged failure to follow the guidelines contained in the United States Attorney's Manual is insufficient to warrant the dismissal of the Indictment under the circumstances presented here.  Cf., United States v. Fish, 2006 WL 3731292 at *12 (W.D.N.Y., December 18, 2006)("The AUSA's failure to comply with DOJ directives provides no basis for suppressing testimony where no constitutional violation occurred."); United States v. Smith, 2002 WL 1059008 at *8 (E.D.La., May 24, 2002)("More fundamentally, any violation of this regulation would not impact upon the integrity of the grand jury process itself, and thus is not the type of violation of positive law that gives rise to judicial review of an indictment.").

Lastly, Hughson contends that the "omnibus" perjury Count is duplicitous, and should be dismissed,  because there are "six alleged lies, some of which are a variant on the same thing."   Hughson's Motion to Dismiss, Docket No. 10, at p. 21. However, "[t]he government, as it did here, sometimes charges multiple perjuries under a single count."   United States v. Pagan-Santini, 451 F.3d 258, 266 (1st Cir. 2006)(summarizing the cases, and finding no error in a perjury Count alleging

multiple false declarations); see, <u>Masinia v. United States</u>, 296 F.2d 871, 880 (8th Cir. 1961)(finding two (2) separate Counts of perjury to be duplicitous when each Count related a single line of questioning, and when the questions were asked at different times, and in different contexts, during a Grand Jury proceeding);[3] <u>United States v. Murray</u>, 618 F.2d 892, 897 (2nd Cir. 1980)("So long as these separate specifications aver different falsehoods, the indictment will not be held defective on the ground that their pleading is duplicitous, that is, averring more than one offense within a single count, or multiplicious, that is, charging the same offense in several separate counts"), citing <u>United States v. Berardi</u>, 629 F.2d 723, 729 (2nd Cir. 1980); <u>United States v. Isaacs</u>, 493 F.2d 1124, 1155 (7th Cir. 1974), cert. denied, 417 U.S. 976(1974)("In perjury cases this means that where one offense is committed, all the false declarations pertaining to that offense can be charged in one count without making that count duplicitous."). Since the Jury can be specifically instructed,  and provided a Special Verdict form, which will effectively preclude confusion on which of Hughson's

---

[3]Here, in contrast, only one Count alleges perjury, so the Government is not attempting, through duplicity, to secure more than one conviction on a single line of questioning.  Even in <u>Masinia v. United States</u>, 296 F.2d 871 (8th Cir. 1961), no reversible error occurred, as the Trial Court, being wary of the potential for duplicity, sentenced the defendant concurrently, on the two Counts that were determined to be duplicitous.

specific statements are the subject of the Jury's Verdict, we find no basis for dismissing the Indictment on duplicity grounds as urged by Hughson.  In sum, we recommend that Hughson's Motion to Dismiss Indictment be denied in all respects.

NOW, THEREFORE, It is –

RECOMMENDED:

That the Defendant's Motion to Dismiss the Indictment [Docket No. 10] be denied.


Dated:  April 26, 2007                     s/Raymond L. Erickson
                                          Raymond L. Erickson
                                          CHIEF U.S. MAGISTRATE JUDGE


**NOTICE**

Pursuant to Rule 45(a), Federal Rules of Criminal Procedure, D. Minn. LR1.1(f), and D. Minn. LR72.1(c)(2), any party may object to this Report and Recommendation by filing with the Clerk of Court, and by serving upon all parties **by no later than May 11, 2007**, a writing which specifically identifies those portions of the Report to which objections are made and the bases of those objections.  Failure to comply with this procedure shall operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.

If the consideration of the objections requires a review of a transcript of a Hearing, then the party making the objections shall timely order and file a complete transcript of that Hearing **by no later than May 11, 2007**, unless all interested parties stipulate that the District Court is not required by Title 28 U.S.C. §636 to review the transcript in order to resolve all of the objections made.